UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

YAMRAJ KHADKA
(A-Number: 221-390-205),

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. 1:26-cv-05225-JLT-CDB (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS

(Doc. 1)

**7-Day Objection Period**

Petitioner Yamraj Khadka, a federal immigration detainee proceeding by counsel, initiated this action on July 7, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). That same day, Petitioner filed a motion for temporary restraining order ("TRO"). (Doc. 2). Petitioner is in the custody of Immigration and Customs Enforcement ("ICE") at the California City Correctional Facility. (Doc. 1 at 2). Respondents are Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); David Venturella, Acting Director of ICE; Nancy Gonzalez, Acting Director of the Bakersfield ICE Field Office; Christopher Chestnut, Warden of the California City Correctional Facility; and Todd Blanche, Acting Attorney General of the United States. *Id.* at 1.

The presiding district judge denied the TRO and referred the action to the undersigned for determination of the petition on the merits. (Doc. 4). On July 8, 2026, the undersigned issued an

order directing Respondents to show cause in writing as to whether there are any factual or legal issues in this case that render it distinct from the Court's prior order in a case where the writ was granted to the petitioner under circumstances similar to those at issue here. (Doc. 6; citing *Hoang v. Chestnut, et al.*, No. 1:26-cv-04023-JLT-CDB, 2026 WL 1875880 (E.D. Cal. June 30, 2026), adopted by 2026 WL 1965614 (E.D. Cal. July 7, 2026)). On July 15, 2026, Respondents filed a motion to set aside the Court's order preventing removal based on their representations that Petitioner had been accepted for removal to the Central African Republic. (Doc. 7). On July 16, 2026, Respondents filed a response to the petition. (Doc. 8). Petitioner thereafter filed an opposition to the motion to set aside (Doc. 10) and a reply (Doc. 11). For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted.

## I. <u>Relevant Background</u>

The relevant facts are drawn from the parties' filings. *See* (Docs. 1, 7, 8, 10, 11). Petitioner is a native of Nepal and entered the United States on January 5, 2025, near San Ysidro, California. He was detained by immigration authorities upon arrival and has remained in continuous immigration custody. He was transferred to the California City Correctional Facility on February 22, 2026. Petitioner has a grand-uncle residing in Round Rock, Texas, with whom he intends to reside if released. (Doc. 1 ¶ 25).

Shortly after his entry into the United States and detention, on January 26, 2025, U.S. Customs and Border Protection issued an expedited order of removal, finding Petitioner inadmissible. Petitioner expressed a fear of return to Nepal, was referred for a credible fear screening, and on March 21, 2025, was issued a positive credible fear determination. The expedited removal order was vacated pursuant to 8 C.F.R. § 208.30. On March 23, 2025, ICE issued Petitioner a Notice to Appear, placing him in full removal proceedings. *Id.* ¶ 26.

Petitioner filed an application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture on November 12, 2025. *Id.* ¶ 28. On December 31, 2025, an immigration judge denied Petitioner's application for asylum and granted withholding of removal to Nepal. After both Petitioner and ICE waived appeal of the immigration judge's order, it became final. *Id.* ¶ 32. On April 20, 2026, the immigration judge denied Petitioner's request for

a bond hearing on the grounds that the immigration court lacked jurisdiction to conduct such a hearing. *Id.* ¶ 35. On June 23, 2026, ICE conducted a custody review interview, without presence of counsel, despite counsel having filed a Form G-28 and transmitted it to ICE on June 5, 2026. *Id.* ¶ 36.

Respondents do not dispute Petitioner's allegations that he has no criminal history in Nepal or the United States. *Id.* ¶ 25; *see* (Doc. 8). Respondents represent that ICE has obtained third-country acceptance from the Central African Republic, completed travel authorization, and scheduled Petitioner's removal. *Id.* at 2. In support, Respondents proffer the declaration of Thurman Karan, Unit Chief for the Removal Management Division of Enforcement and Removal Operations ("ERO") for ICE. (Doc. 7-1). Mr. Karan declares that, on April 4, 2026, the Central African Republic "provided diplomatic assurances that aliens removed from the United States … will not be subjected to persecution or torture," and on May 4, 2026, the Department of State determined the "diplomatic assurances were credible." *Id.* ¶ 4.

Mr. Karan attests that the Removal Management Division "received notification that the Petitioner's name was accepted by the Government of the Central African Republic as per our prior elevation request pursuant to the Third County Removal agreement that the Department of State negotiated and signed with the Government of the Central African Republic." *Id.* ¶ 5. Mr. Karan represents that Petitioner's acceptance and "placement on a manifest for a charter serves as the travel document in the Petitioner's removal," with the removal flight scheduled for the last week of July. *Id.* ¶¶ 6-7. Mr. Karan further asserts that "ICE will follow the March 30th, 2025 memorandum *Guidance Regarding Third Country Removals* to effectuate the Petitioner's removal." *Id.* ¶ 8. Respondents also proffer a letter dated May 4, 2026, addressed to Todd Lyons from Christopher Landau, regarding diplomatic assurances to the United States from the Central African Republic. (Doc. 7-2).

In his reply and his opposition to the motion to set aside, Petitioner asserts that the Central African Republic was not mentioned at his merits hearing, nor at his custody review interview, and was not communicated to him in any form prior to this litigation. (Doc. 10 at 2-4; Doc. 11 at 3). Petitioner represents that he was not served with any Notice of Removal identifying the Central

African Republic and immigration officials "did not ask him whether he fears return there." Petitioner asserts that the "generalized, country-level diplomatic assurance obtained from the [Central African Republic] government" is not a "substitute for the individualized process" required. (Doc. 11 at 4-5); *see* (Doc. 10 at 5). Petitioner argues that the Karan Declaration contains "no showing that removal to any country in the statutory hierarchy was found impracticable, inadvisable, or impossible before Respondents arranged for [Central African Republic] to accept Petitioner." (Doc. 11 at 5); *see* (Doc. 10 at 5-6).

The Court takes judicial notice that Petitioner has no upcoming hearings and the EOIR's automated case database reflects the immigration judge ordered removal on December 31, 2025.[1]

## II. Governing Authority

### A. The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

### B. Removal of a Noncitizen

Relevant here is the legal background presented by another judge of this Court regarding detainment after a noncitizen is ordered removed, in *A.A.M. v. Andrews*, No. 1:25-cv-01514-DC-DMC (HC), 2026 WL 1099063 (E.D. Cal. Apr. 21, 2026), which the undersigned adopts herein:

> When the Government wants to remove a noncitizen, the normal path is through removal proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C. § 1229(a). In the removal proceeding, the Immigration Judge determines both whether a noncitizen may be removed and to what country or countries he may be removed. 8 C.F.R. § 1240.12(d) ("When a respondent is ordered removed from the United States, the

[1] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited July 30, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co*., 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

immigration judge shall identify a country, or countries in the alternative, to which the alien's removal may in the first instance be made, pursuant to [8 U.S.C. § 1231(b)(2)].") Section 1231(b)(2) requires that the immigration judge prioritize removal to countries as follows:

> (1) An alien shall be removed to the country of his choice (subparagraphs (A) to (C)), unless a condition eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless a condition eliminating that command is satisfied; (3) otherwise he shall be removed to a country with which he has a lesser connection (subparagraph (E), clauses (i) to (vi), including the country of his birth (clause (iv))); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to another country whose government will accept him (subparagraph (E), clause (vii)).

*Jama v. Immigr. and Customs Enf't*, 543 U.S. 335, 341, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) (citing 8 U.S.C. § 1231(b)(2)).

If the U.S. Department of Homeland Security (DHS) is "unable to remove the alien to the specified or alternative country or countries, the order of the immigration judge does not limit [DHS's authority] to remove the alien to any other country as permitted by [8 U.S.C. § 1231(b)]." 8 C.F.R. § 1240.12(d). Removal to countries identified outside of removal proceedings are referred to as "third country removals." Notwithstanding DHS's authority to effectuate third country removals, noncitizens may not be removed to countries where, as potentially relevant here, their "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," (referred to as "withholding of removal"), or where "it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal" (referred to as the "Convention Against Torture" (CAT)). 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16. Both withholding of removal and the CAT provide mandatory protections from removal to the country or countries where the noncitizen is more than likely to be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16.2 While DHS has the authority to remove a noncitizen to a country not identified in the final removal order, there is no statute or regulation providing a specific procedure to effectuate such a third country removal. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019).

After a noncitizen is ordered removed, ICE "shall remove the alien from the United States within a period of 90 days ...." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period begins, as

> relevant here, on the "date the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B)(i). ICE is required to detain the noncitizen during the removal period. § 1231(a)(2). If the noncitizen is not removed during the removal period, ICE "may" continue to detain the noncitizen after the removal period if he falls into certain categories, including that he entered "the United States without being admitted or paroled," or arrived "in the United States at any time or place other than as designated by the Attorney General." §§ 1231(a)(6), 1182(a)(6)(A)(i). Although there is no explicit statutory limit to the period for which a noncitizen may be detained following the removal period, in *Zadvydas* the Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of post-removal period detention,
>
> > once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.
>
> *Id.* at 701.

*A.A.M.*, 2026 WL 1099063, at *3–5.

## III. <u>Exhaustion</u>

### A. Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United*

*States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered.… Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

**B. Analysis**

Respondents assert generally that "[e]xaustion and jurisdiction foreclose the petition," but provide no further argument regarding the exhaustion issue. (Doc. 8 at 3). Petitioner states that the petition challenges Respondents' "unadjudicated decision to remove him to a country that [the removal] order never addressed, without any of the process the INA and the Fifth Amendment require before that can happen—a decision no order has yet been entered to 'execute.'" Petitioner states that the Respondents "do not identify what administrative remedy Petitioner failed to pursue." (Doc. 11 at 6).

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that detention is mandatory. *See* (Doc. 8 at 3, citing 8 U.S.C. § 1231).

**IV. <u>Discussion</u>**

Petitioner asserts two claims for relief: (1) unlawful detention under 8 U.S.C. § 1231(a)(6) and *Zadvydas*, 533 U.S. at 701; and (2) violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution. (Doc. 1 at 8-11).

As set forth below, because the undersigned finds that Petitioner's detention is not authorized by statute, and because Petitioner's other claims seek the same or similar relief (i.e., for immediate release and to enjoin Respondents from re-detaining Petitioner unless his re-detention is justified), the undersigned forbears from addressing Petitioner's other claims.

**A. Third Country Removal**

Relevant here is the legal background presented by another judge of this Court regarding third country removal, in *A.A.M. v. Andrews*, 2026 WL 1099063, at *8:

> The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673, 145 S.Ct. 1003, 221 L.Ed.2d 529 (2025) (citation omitted); *see also Zadvydas*, 533 U.S. at 693, 121 S.Ct. 2491 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").
>
> The Due Process Clause applies to noncitizens in the country in connection with removal proceedings, even if their presence is unlawful or temporary. *See Zadvydas*, 533 U.S. at 693, 121 S.Ct. 2491; *Andriasian v. Immigr. and Naturalization Servs.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). This right to due process applies equally to the initial removal determination and determination of removal withholding relief to an identified third country. *Johnson v. Guzman Chavez*, 594 U.S. 523, 557, 141 S.Ct. 2271, 210 L.Ed.2d 656 (2021) (Breyer, J., dissenting) ("[A]ll here agree that the aliens are legally entitled to seek [ ] withholding-only relief."); *A.A.M.*, 815 F.Supp.3d 1124, 1141–42 ("Due process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator.").
>
> Joining numerous other courts, and the District Judge's prior determination in this case, the undersigned finds that ICE's policy for third-country removals is incompatible with Ninth Circuit law and violates due process because it currently provides little to no notice of the country to which a noncitizen is to be removed and no meaningful opportunity to raise a fear-based claim. *See Vishal v.*

> *Chestnut*, 811 F.Supp.3d 1179, 1187–88 (E.D. Cal. 2025) (noting "[m]ultiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent" and concurring (citing cases)); *Giebashvili v. Noem*, No. 25-cv-3432 BJC VET, 2026 WL 114422, at *3 (same) (collecting cases); *Nguyen*, 796 F. Supp. 3d at 728 ("It would be impossible to comply both with Ninth Circuit precedent and the policy." (citing *Andriasian*, 180 F.3d at 1041; *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)); *A.A.M. v. Andrews*, 815 F.Supp.3d 1124, 1137–38 (E.D. Cal. 2025) ("the court finds Petitioner has a protected liberty interest in having an immigration judge review USCIS's determination on his fear-based claim regarding removal to [a third country].").

*See also Lapshin v. Bondi*, No. C25-2245-KKE, 2026 WL 71407, at *5 (W.D. Wash. Jan. 9, 2026) ("Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with 8 U.S.C. § 1231(b) and the Due Process Clause.") (citing *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash. 2019)); *Berhe v. Mullin*, No. 3:26-cv-2828-JES-VET, 2026 WL 2188211, at *2 (S.D. Cal. July 29, 2026) ("The Status Report discloses that ICE intends to remove Petitioner to the CAR on or about July 30, 2026, using the same March 30 Memo procedures this Court has already found unlawful.").

Here, Respondents do not demonstrate or even argue that Petitioner was informed of any pending third country removal to the Central African Republic and no information before the Court indicates such notice. *See generally* (Doc. 7). Petitioner attests that he was not informed in any manner that he may be removed to the Central African Republic and first learned of any such possible removal when his attorney reviewed with him Respondents' motion to set aside and the declaration of Mr. Karan. (Doc. 10-1 ¶¶ 4-5). Petitioner states that he has never been to the Central African Republic, does not know anyone who lives there, and does not speak any language spoken there, and has no connection otherwise to that country. *Id.* ¶ 6. He expresses a fear of harm if he were to be sent there and states that no immigration official has asked him whether he is afraid to be removed to the Central African Republic, and that he has never had a chance to explain his situation or any fear he may have. *Id.* ¶¶ 7-8.

The undersigned agrees with the reasoning of other judges of this Court that have found that the March 30, 2025, guidance issued by DHS, and referenced by Mr. Karan, violates due process and is contrary to Ninth Circuit precedent. *See Vishal*, 811 F. Supp. 3d at 1187 (citing cases and finding "that Respondents' third country removal policy, as set forth in the March 30, 2025, and July 9, 2025 policy memorandums, violates due process and is contrary to Ninth Circuit precedent"). Petitioner may not be removed to a third country without meaningful notice and an opportunity to present a fear-based claim. The record evidence before this Court establishes that Respondents did not provide notice of such removal nor opportunity to raise such a claim.

Thus, the undersigned will recommend the petition be granted and Respondents' motion to set aside be denied. *See Berhe*, 2026 WL 2188211, at *2 ("The legal landscape governing due process in third-country removal proceedings has not changed: courts in this district and throughout the Ninth Circuit continue to hold, as they did when this Court issued its prior order, that the March 30 Memo's diplomatic-assurances exception violates due process.").

**B. Remedy**

Petitioner has been detained for over 18 months upon entering the United States and over seven months since he was granted withholding of removal to Nepal. (Doc. 1 at 2). Thus, Petitioner has made a showing that removal is not significantly likely in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701.

Respondents have failed to meet their burden to respond with evidence sufficient to rebut Petitioner's showing. *See id.* Respondents proffer only that they intend to remove Petitioner to the Central African Republic using the same March 30, 2025, guidelines that numerous courts within this circuit have found unlawful, without any notice to Petitioner nor any opportunity to raise a fear-based claim. Because any such removal cannot be effectuated consistent with governing statutory and constitutional law and Respondents have not demonstrated otherwise, it follows that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future. *See Berhe*, 2026 WL 2188211, at *2 ("Respondents have not met that burden. The Status Report discloses that ICE intends to remove Petitioner to the CAR on or about July 30, 2026, using the same March 30 Memo procedures this Court has already found unlawful. Because any removal to

the CAR, under those procedures is enjoined, it cannot constitute a 'significant likelihood of removal' for *Zadvydas* purposes.").

Petitioner asserts he has no criminal history. (Doc. 1 at 5). Respondents do not contest this nor provide any argument or factual proffer regarding any arrests, convictions, risk of flight, or danger to the community. *See* (Docs. 7, 8). In light of these facts, and as the undersigned has found that Petitioner's detention is no longer authorized by statute, the undersigned will recommend that Petitioner be released immediately, pursuant to the conditions set forth in 8 U.S.C. § 1231(a)(3) and (7), which "provides the process for supervision of noncitizens who are released from detention because they were not removed within the 90-day removal period." *See A.A.M.*, 2026 WL 1099063, at *8 (finding that petitioner be immediately released).

## V. Conclusion and Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED;
2. Respondents' motion to set aside (Doc. 7) be DENIED;
3. Respondents be ORDERED to release Petitioner immediately under conditions prescribed pursuant to 8 U.S.C. § 1231(a)(3) and (7), as well as 8 C.F.R. § 241.5;
4. Respondents be PERMANENTLY ENJOINED AND RESTRAINED from removing Petitioner to the Central African Republic, or any third country, unless Respondents adhere to the following procedures:
    a. demonstrate compliance with 8 U.S.C. § 1231(b)(2);
    b. provide Petitioner and his counsel notice and a minimum of ten (10) days to raise a fear-based claim for protection prior to removal;
    c. if Petitioner demonstrates reasonable fear of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings;
    d. if Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of 15 days for Petitioner to seek reopening of his immigration proceedings;

5. In the event Petitioner does assert a fear-based claim for relief from removal, Respondents be ENJOINED AND RESTRAINED from removing Petitioner to the third country without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process;
6. Respondents be ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a lawful travel document authorizing Petitioner's removal and demonstrate compliance with all applicable constitutional and statutory requirements.
7. Respondents be ORDERED to file, within five (5) days of the date of the Court's order, a status report confirming that Petitioner has been released; and
8. The Clerk of the Court be DIRECTED to enter judgment for Petitioner and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

///

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 31, 2026**

UNITED STATES MAGISTRATE JUDGE